TRYBA, Plaintiff and Appellant, v. PETCOFF, Defendant: STANDARD OIL COMPANY (INDIANA), Defendant and Respondent.*

*April 5—May 3, 1960.*

* Motion for rehearing denied, with $25 costs, on June 28, 1960.

310

For the appellant there were briefs by *Markey & Markey,* attorneys, and *Maurice L. Markey* of counsel, all of Milwaukee, and oral argument by *Maurice L. Markey.*

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Kurt H. Frauen* of counsel, all of Milwaukee, and oral argument by *Mr. Frauen.*

FAIRCHILD, J.   It appears that plaintiff Tryba must have maintained a connection between the air hose and the tire long enough to raise the pressure in the tire to 100 pounds, or more, and that such pressure was the cause of the accident. It is clear that if an air-pressure regulator had been installed, and set at 60 or 75 pounds, Tryba could not have raised the pressure above the amount set, and the accident would not have happened. If an air meter had been installed, Tryba could have set it at 60 pounds, and the accident would not have happened. The evidence also in-

dicates that one who was experienced in inflating tires would not need such devices in order to avoid a dangerous pressure.

It is undisputed that the filling station was a place of employment under secs. 101.01 and 101.06, Stats. If the use of the air hose by inexperienced employees or frequenters be anticipated, it would not be unreasonable to require that a pressure regulator, or air meter be installed in order to make the equipment safer when so used. The hoist on the premises required the amount of pressure supplied by the compressor system, 145 to 180 pounds, but almost all the tires inflated at this particular station were on passenger cars, and required only about 30 pounds of pressure.

The question before us is whether, under all the circumstances, sec. 101.06, Stats., required Standard Oil Company, as owner of the place of employment, to install the pressure regulator, or air-meter equipment.

The lease is in evidence. By it, Standard Oil Company leased to Petcoff the real estate upon which the filling station is located "together with the buildings, fixtures, equipment, machinery, and appliances located thereon" expressly including, among other things, the compressor, the compressor motor, and an air standard. The entire air system was an installation of a permanent nature. The lease contains a recitation that it is "contemplated that at all times during the period of this lease said premises shall be devoted mainly to the operation thereon of a gasoline service station . . ." It is also provided:

"That none of the provisions of this lease shall be construed as reserving to the lessor any right to exercise any control over the business or operations of the lessee conducted upon the leased premises or to direct in any respects the manner in which any such business and operations shall be conducted, it being understood and agreed that so long as the lessee shall use said premises in a lawful manner

as herein provided, the entire control and direction of such activities shall be and remain with the lessee."

Plaintiff points out that the lease also contained a provision permitting the lessor to enter upon the premises at all reasonable times to examine its condition, and to make such changes or repairs to any of the structures as the lessor might see fit. The claimed defect, however, is the construction of the air system without an air-pressure regulator, or air meter, and not a lack of repair or maintenance of the equipment installed.

There is no question but that Petcoff had the duties of an employer under sec. 101.06, Stats. The lease contemplated that the control and custody of the employment, place of employment, and employees were vested in Petcoff to the exclusion (except for inspection, repair, and maintenance) of Standard Oil Company. Thus the duty of the latter under sec. 101.06 was only the duty of the owner of a place of employment. The material part of that section provides that "Every employer and every owner of a place of employment . . . shall so construct, repair, or maintain such place of employment . . . as to render the same safe." Broader duties are assigned to the employer in the first sentence of the section; but not to the owner.

The record does not affirmatively show that the contemplated operation of a service station necessarily, or even ordinarily, includes the use of the air hose by unskilled persons. The majority of the members of the court deem that under the circumstances the duty of the owner to construct the place of employment so as to render it safe did not extend to installing the pressure regulator and air-meter equipment, even though such equipment might reasonably be considered necessary in order to make the place safe if the air hose is to be used by unskilled persons. The decision to permit frequenters to use the air hose without

regard to their skill or experience was made by Petcoff in his capacity as "employer," and any duty to make the compressed-air equipment safer because of such use by the unskilled was his duty, rather than the owner's.

*By the Court.*—Judgment affirmed.